**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ERVIN JEFFERY CRAMPTON,<br><br>Plaintiff<br><br>v.<br><br>CITY OF HENDERSON and STEPHANIE GARCIA-VAUSE,<br><br>Defendants | Case No.: 2:25-cv-02392-APG-MDC<br><br>**Order (1) Denying Defendant Garcia-Vause's Anti-SLAPP Motion; (2) Granting in Part Defendants' Motion to Dismiss; and (3) Denying Plaintiff's Motion to Strike**<br><br>[ECF Nos. 6, 7, 14] |

Plaintiff Ervin Crampton is a real estate agent who alleges that he served as a volunteer for the Southern Desert Regional Police Academy and the Henderson Police Department (HPD). He sues the City of Henderson and its City Manager, Stephanie Garcia-Vause. In a nutshell, Crampton alleges that he served as a volunteer for over a decade and made professional connections with HPD members through his volunteering that has benefited his real estate business. He contends that in early 2025, he began to publicly criticize the City's decision to place former HPD police chief Hollie Chadwick on administrative leave and then terminate her. He asserts that in response, the City and Garcia-Vause retaliated against him by cancelling a service award he was to receive from HPD, falsely telling an HPD captain that Crampton was under investigation for fraud, revoking his ability to volunteer with the HPD Training Academy, and publicly linking him to alleged misconduct against City Councilmember Carrie Cox. Crampton asserts a First and Fourteenth Amendment retaliation claim under 42 U.S.C. § 1983 against the City and Garcia-Vause in her individual and official capacities (count one). He also asserts state law defamation (count two), false light (count three), and intentional infliction of emotional distress (IIED) (count four) claims against Garcia-Vause.

The City and Garcia-Vause filed two motions to dismiss. First, Garcia-Vause moves to dismiss under Nevada's anti-SLAPP statute, Nevada Revised Statutes (NRS) § 41.660. Alternatively, she and the City move to dismiss all claims for failure to state a claim. Crampton concedes one aspect of one of his claims but otherwise opposes the motions. He also moves to strike portions of Garcia-Vause's declaration attached to her anti-SLAPP motion because he contends it contains impertinent material that bears no relation to the purpose of an affidavit in support of an anti-SLAPP motion.

I deny Garcia-Vause's anti-SLAPP motion because it does not apply to Crampton's federal claim. Additionally, Crampton plausibly alleges that Garcia-Vause's statement about Crampton being investigated for fraud was not truthful, Garcia-Vause knew she had no basis to make the statement, and she did so as part of a malicious retaliation campaign. I grant in part Garcia-Vause and the City's motion to dismiss for failure to state a claim, with leave to amend. Finally, I deny Crampton's motion to strike.

## I. I DENY GARCIA-VAUSE'S ANTI-SLAPP MOTION (ECF No. 6).

Garcia-Vause[1] moves to dismiss each of Crampton's claims under Nevada's anti-SLAPP statute. She argues that her statements and expressive conduct are the types of communications the anti-SLAPP statute protects. She also argues her statements were truthful or without knowledge of their falsity, and she attached to her motion a supporting declaration. Garcia-Vause contends that because that satisfies her initial burden on the anti-SLAPP statute, the burden shifts to Crampton to show he can prevail on his claims. She contends he cannot do so because the absolute litigation privilege protects her statements.

[1] The parties agree the City cannot bring an anti-SLAPP motion. ECF Nos. 6 at 7 n.3; 13 at 6-7.

Crampton responds that the only speech that is arguably protected by the anti-SLAPP statute is his allegation that Garcia-Vause falsely told a police captain that Crampton was under investigation for fraud. He contends his other allegations are based on conduct, not speech. As for the alleged statement about the fraud investigation, he argues Garcia-Vause has not met her burden to show the statement was a good faith communication because she admits she had no support for the proposition that Crampton individually was under investigation for fraud. He also argues that under Nevada anti-SLAPP law, she cannot dispute the complaint's allegation that she accused him of personally being under investigation for fraud, so her statement in her declaration that she does not believe she used the word fraud is irrelevant. He also argues that there is no privileged basis for her telling the HPD captain that Crampton was under investigation for fraud because the statement had no relationship to any proceeding. He further contends the statement was not made to initiate official action, as the awards ceremony was not a judicial or quasi-judicial proceeding and the decision to give him the award had already been made.

As an initial matter, Nevada's anti-SLAPP statute does not apply to a federal claim. *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 955 n.3 (9th Cir. 2013); *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010). I therefore deny the motion as to Crampton's § 1983 claim.

As for the state law claims, Crampton's defamation and false light claims against Garcia-Vause rest only on her alleged statement that Crampton was under investigation for fraud.[2] The

[2] ECF No. 1 at 16 (defamation claim resting on the allegation that Garcia-Vause "maliciously and falsely informed the HPD committee in charge of selecting community service award recipients that Plaintiff's award was being cancelled because he was under investigation for fraud"), 17 (alleging for his false light claim that "Garcia-Vause falsely informed several members of the HPD, including Captain Ed Bogdanowicz and other members of the HPD committee in charge of selecting community service award recipients, that Plaintiff was being investigated for fraud, even though Plaintiff was not the subject of any fraud investigations").

IIED claim rests on this same allegation as well as Garcia-Vause "singling [Crampton] out for retaliation" and terminating him as a volunteer. ECF No. 1 at 18-19.

"A SLAPP suit is a meritless lawsuit that a party initiates primarily to chill a defendant's exercise of his or her First Amendment free speech rights." *Stubbs v. Strickland*, 297 P.3d 326, 329 (Nev. 2013) (en banc). "Nevada's anti-SLAPP statutes provide defendants with a procedural mechanism whereby they may file a special motion to dismiss the meritless lawsuit before incurring significant costs of litigation." *Stark v. Lackey*, 458 P.3d 342, 345 (Nev. 2020) (en banc). Nevada's anti-SLAPP statute sets out "a two-prong analysis to determine the viability of a special motion to dismiss." *Id.* "First, the district court must '[d]etermine whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern.'" *Id.* (quoting Nev. Rev. Stat. (NRS) § 41.660(3)(a)). "Second, if the district court finds the defendant has met his or her burden, the court must then 'determine whether the plaintiff has demonstrated with prima facie evidence a probability of prevailing on the claim.'" *Id.* (quoting NRS § 41.660(3)(b)).

"The degree to which [state] anti-SLAPP provisions are consistent with the Federal Rules of Civil Procedure has been hotly disputed." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021) (quotation omitted); *see also Gopher Media LLC v. Melone*, 154 F.4th 696, 709 (9th Cir. 2025) (en banc) (where concurring opinions dispute whether California's anti-SLAPP statute should apply in federal court).[3] In addressing a motion brought under California's anti-SLAPP law, the Ninth Circuit stated that:

---

[3] The Supreme Court's decision in *Berk v. Choy* casts further doubt on applying a state's anti-SLAPP rules in federal court. 607 U.S. 187, 193-94 (2026) (holding that a state law requirement

> [r]equiring a presentation of evidence without accompanying discovery would improperly transform the motion to strike under the anti-SLAPP law into a motion for summary judgment without providing any of the procedural safeguards that have been firmly established by the Federal Rules of Civil Procedure. That result would effectively allow the state anti-SLAPP rules to usurp the federal rules. We could not properly allow such a result.

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833-34 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018). *Planned Parenthood* resolved the issue with respect to California's anti-SLAPP law by adopting the rule that "when an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Id.* at 834. If an "anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply. But in such a case, discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court." *Id.* "A contrary reading of these anti-SLAPP provisions would lead to the stark collision of the state rules of procedure with the governing Federal Rules of Civil Procedure while in a federal district court." *Id.*; *see also Gunn v. Drage*, 65 F.4th 1109, 1120 (9th Cir. 2023) (holding that the *Planned Parenthood* "rules for anti-SLAPP motions to strike apply in federal court regardless of whether a plaintiff challenges the first or second step of the anti-SLAPP analysis," and courts may "rely on extrinsic evidence whether the challenge is as to the first step, the second step, or both steps").

---

that a plaintiff submit an affidavit with a complaint did not apply in federal court because Federal Rule of Civil Procedure 8 controlled what a plaintiff must state in a complaint).

The Ninth Circuit has not addressed in a published opinion[4] whether the *Planned Parenthood* rules apply to Nevada's anti-SLAPP statute, which materially differs from the California statute. For example, California does not require the defendant filing an anti-SLAPP motion to show at step one that the protected conduct was truthful or without knowledge of its falsehood at all, much less by a preponderance of the evidence like Nevada does. *Compare* Cal. Civ. Proc. Code § 425.16 *with* NRS §§ 41.637, 41.660(3)(a). And although the Supreme Court of Nevada stated in a published opinion that "[a]s amended, the special motion to dismiss again functions like a summary judgment motion procedurally,"[5] it has receded from that statement in several unpublished decisions, at least with respect to step one.[6] To the extent the Nevada statute creates a procedure whereby the judge makes a finding by a preponderance of the evidence at step one, that directly collides with Federal Rules of Civil Procedure 12 and 56. Federal judges

---

[4] The Ninth Circuit has indicated in unpublished decisions that *Planned Parenthood*'s analysis applies to Nevada's anti-SLAPP statute. *Wealthy, Inc. v. Mulvehill*, No. 23-16132, 2026 WL 544972, at *3 (9th Cir. Feb. 25, 2026); *Wynn v. Bloom*, 852 F. App'x 262, 263 n.2 (9th Cir. 2021).

[5] *Coker v. Sassone*, 432 P.3d 746, 748 (Nev. 2019).

[6] *Lee v. Liu*, No. 84442, 542 P.3d 429, 2024 WL 463955, at *1 n.3 (Nev. Feb. 6, 2024) (stating the district court "recognized the appropriate preponderance of the evidence standard under NRS 41.660" for step one); *Omerza v. Fore Stars, Ltd*, No. 76273, 455 P.3d 841, 2020 WL 406783, at *2 n.5 (Nev. Jan. 23, 2020) ("To the extent that the district court focused on the existence of a genuine issue of material fact in determining that appellants did not meet their step-one burden on the good faith component, we conclude that the court erred, as the anti-SLAPP burdens and the summary-judgment burdens are substantively different" and "at step one, the summary-judgment standard is incompatible with the burden set forth in NRS 41.660(3)(a)."). For step two, the Nevada Legislature specifically codified that "in determining whether the plaintiff 'has demonstrated with prima facie evidence a probability of prevailing on the claim' the plaintiff must meet the same burden of proof that a plaintiff has been required to meet pursuant to California's anti-Strategic Lawsuits Against Public Participation law as of June 8, 2015." NRS § 41.665(2). In June 2015, California's anti-SLAPP statute stated that the plaintiff had to establish "that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16 (2015). However, in California, a "court does not weigh evidence or resolve conflicting factual claims." *Baral v. Schnitt*, 376 P.3d 604, 608 (Cal. 2016).

make no such findings by a preponderance of the evidence under either rule when deciding whether a plaintiff's claim can proceed.

Nevada's anti-SLAPP statute is further complicated by differing standards within step one of the analysis, which is itself comprised of two components. First, the movant must show "that the comments at issue fall into one of the four categories of protected communications enumerated in NRS 41.637." *Stark*, 458 P.3d at 345. Second, the movant must show "that the communication 'is truthful or is made without knowledge of its falsehood.'" *Id.* (quoting NRS § 41.637). The Supreme Court of Nevada has applied different standards to these two aspects of step one. In *Spirtos v. Yemenidjian*, the Supreme Court of Nevada stated that "the district court correctly disregarded [the anti-SLAPP movant's] declaration at step one of its analysis" when determining whether the plaintiff's claim was based on a communication in one of the protected categories. 499 P.3d 611, 616 (Nev. 2021). Instead, the district court "must evaluate the communication as it is alleged in the plaintiff's complaint and in any of the plaintiff's clarifying declarations." *Id.* But then the court considered the movant's declaration at the second part of step one to determine whether the movant had proved by a preponderance of the evidence that the communication was a good faith communication.[7] *Id.* at 618.

That the Supreme Court of Nevada shifts what sources the court should look at during these two stages of step one suggests another potential conflict with the federal rules. A federal court would not ordinarily treat a motion as one to dismiss at one part of the analysis and then

---

[7] The court also confusingly referred to both aspects of step one as step one, so the opinion states both that the court should not consider the movant's declaration at step one and should consider the movant's declaration at step one. *Compare Spirtos*, 499 P.3d at 616 ("We conclude that the district court correctly disregarded [the movant's] declaration at step one of its analysis."), *with id.* at 618 (considering the movant's declaration when reviewing "the district court's analysis during the first step, [where] the district court must also find [the movant's] statement was a good faith communication" under a preponderance of the evidence standard (quotation omitted)).

switch to a summary judgment standard at the next part of the same analysis, much less decide the question by a preponderance of the evidence. Consequently, I conclude that if Nevada's anti-SLAPP statute applies at all in federal court, then the Ninth Circuit would apply the *Planned Parenthood* and *Gage* analyses such that the motions should be considered as motions to dismiss or motions for summary judgment.

Here, Garcia-Vause styled her motion as one to dismiss and did not invoke the summary judgment standard. ECF No. 6 at 1, 5-6. I therefore treat it as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and exclude her declaration under Rule 12(d). In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017) (quotation omitted). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

I deny the motion because the complaint plausibly alleges that (1) Garcia-Vause "told members of the awards committee that [Crampton] was under personal investigation for fraud," (2) that statement was false, (3) Garcia-Vause "maliciously mischaracterized [a] complaint against the Voters for Trusted Leadership PAC [of which Crampton was president] as a 'fraud investigation' against [Crampton] . . . personally" when the subject investigation did not allege fraud at all, much less against Crampton personally, and (4) that she did so in retaliation for Crampton's speech. ECF No. 1 at 8-9. Allegations that Garcia-Vause maliciously

mischaracterized an investigation about a PAC that involved no fraud allegations against the PAC or Crampton into a statement that Crampton is personally being investigated for fraud plausibly alleges that the communication was not truthful or was made with knowledge of its falsehood. NRS § 41.637 (defining a good faith communication as "truthful or . . . made without knowledge of its falsehood"). I therefore deny the anti-SLAPP motion to dismiss.

## II. I GRANT IN PART THE DEFENDANTS' MOTION TO DISMISS (ECF No. 7).

### A. I dismiss Crampton's § 1983 claim, with leave to amend.

Crampton asserts a claim under § 1983for retaliation in violation of the First and Fourteenth Amendments. "To state a claim under § 1983, the plaintiff must allege a violation of his constitutional rights and show that the defendant's actions were taken under color of state law." *Gritchen v. Collier*, 254 F.3d 807, 812 (9th Cir. 2001). The parties do not dispute that the defendants acted under color of state law.

To state a First Amendment retaliation claim, a plaintiff must allege

> (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.

*Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (quotation omitted). The defendants raise numerous arguments as to why this claim should be dismissed.

#### 1. I dismiss the official capacity claims against Garcia-Vause as duplicative.

The defendants argue that the § 1983 claim against Garcia-Vause in her official capacity is duplicative of Crampton's claim against the City. Crampton concedes this point, so I grant the motion to dismiss the official capacity claims against Garcia-Vause. ECF No. 13 at 21.

2. Crampton did not respond to several of the defendants' arguments, so I grant their motion as to those portions, with leave to amend.

The defendants argue that Crampton has not alleged that not receiving an award or not being allowed to volunteer[8] would chill First Amendment protected speech. They also contend that losing "his preferred way of cultivating professional clients" is not constitutionally protected. ECF No. 7 at 13. And they assert that Crampton has no constitutionally protected interest in his reputation under the Fourteenth Amendment.

Crampton did not respond to any of these arguments. I therefore grant this portion of the defendants' motion as unopposed. LR 7-2(d). But because it is not clear that amendment would be futile, I grant Crampton leave to amend. *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013) ("As a general rule, dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." (simplified)). And because I am granting leave to amend, I address the parties' other arguments on this claim to guide Crampton's amendment.

3. Crampton's allegations about his speech are not conclusory.

The defendants argue Crampton's allegations about what he said are too conclusory to make his First Amendment claim plausible or for the court to determine whether his communications are protected under the First Amendment. Crampton responds that he has adequately alleged that he spoke as a private citizen to express support for Chadwick and to request transparency about the reason Chadwick was terminated.

---

[8] The defendants also argue "there is no record of Crampton being a volunteer" for the City or HPD. ECF No. 7 at 13. They thus argue that because he "was never a volunteer with the City, Defendants did not have a role in his alleged termination of his volunteer role." *Id.* Crampton responds that because this is a motion to dismiss, I must take his allegations that he was a volunteer as true. Crampton is correct, so I reject this argument.

Crampton has adequately pleaded facts regarding his speech. He alleges that he "organize[d] petitions to reinstate [Chadwick] and to protest her firing." ECF No. 1 at 6. He "spoke in public comment session[s]" at Henderson City Council meetings on four separate dates. *Id.* at 7. At those meetings, he "criticized the City and Defendant Garcia-Vause for their lack of transparency in dealing with the HPD," he stated that Chadwick "was being targeted," that the City's decision to fire Chadwick would be "'very destructive'" to the HPD, and that Chadwick had provided stability to the HPD after years of several prior chiefs leaving amid controversy. *Id.* The complaint contains numerous other allegations of Crampton's remarks at the March 4 and March 18, 2025 city counsel meetings. *Id.* I therefore deny the defendants' motion on this ground.

<u>4. Crampton plausibly alleges that he was speaking as a citizen on a matter of public concern.</u>

The defendants contend that if Crampton was a volunteer with the City, then his First Amendment rights are curtailed as a public employee. They argue that his speech is not protected unless he was speaking as a citizen addressing a matter of public concern. The defendants assert that Crampton's speech did not involve a public concern and instead involved his personal disagreement with Chadwick's removal as HPD Chief, which the defendants characterize as a "personnel dispute." ECF No. 7 at 14.

Crampton responds that he specifically alleges in the complaint that Chadwick's termination was a matter of public concern. He notes that he had no personal stake in Chadwick's termination and was not speaking about his own status as a volunteer.

"The First Amendment shields public employees from employment retaliation for their protected speech activities." *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir.

2012). Where a public employer retaliates against an employee for workplace-related speech, the First Amendment requires balancing "the interests of the public employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968) (simplified).[9]

"The First Amendment shields a public employee if he speaks as a citizen on a matter of public concern." *Anthoine v. N. Cent. Cntys. Consortium*, 605 F.3d 740, 748 (9th Cir. 2010) (quotation omitted). "However, 'when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.'" *Id.* (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). I "employ a sequential five-step series of questions to determine whether an employer impermissibly retaliated against an employee for protected speech." *Id.* (quotation omitted).

The first of those questions is "whether the plaintiff spoke on a matter of public concern."[10] *Id.* "Speech involves a matter of public concern when it fairly can be said to relate to any matter of political, social, or other concern to the community." *Id.* (quotation omitted). "Public concern does not have a precise definition, but the essential question is whether the

---

[9] Crampton does not dispute that the public employee test applies based on his volunteer status. *See Hyland v. Wonder*, 972 F.2d 1129, 1137 (9th Cir. 1992) (applying *Pickering* to a volunteer).

[10] The other questions are: "(2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech." *Anthoine*, 605 F.3d at 748. The defendants move to dismiss only on the basis that Crampton did not speak on a matter of public concern and that the defendants were justified in their actions, so I do not address the other questions.

speech addressed matters of public as opposed to personal interest." *Id.* (simplified). Whether the plaintiff spoke on a matter of public concern is a question of law. *Id.* I must consider "the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). "Of these, content is the most important factor." *Anthoine*, 605 F.3d at 748.

Crampton has plausibly alleged that he spoke on a matter of public concern. He alleges that after Chadwick was placed on leave, "the City was inundated with calls for transparency from Henderson residents and at least one elected official." ECF No. 1 at 5. He also alleges he obtained over 2,100 signatures for a petition to reinstate her and 340 for another protesting her termination. *Id.* at 6. And he alleges that the Las Vegas Review Journal newspaper published an article about one of the city council meetings at which Crampton spoke, "reporting specifically on [Crampton's] remarks during the meeting." *Id.* at 7-8. He spoke on matters concerning the City's "lack of transparency in dealing with the HPD," that Chadwick's termination would be destructive to the department and public safety, critiqued Garcia-Vause for firing Chadwick "merely for 'not seeing eye to eye,'" and "requested more transparency from the City regarding its management of the HPD." *Id.* at 7. Crampton has plausibly alleged that his speech involved matters of public concern regarding the running of the police department and the relationship between the City and the department. *See McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983) (holding that speech about "the working relationship between the police union and elected city officials" was a matter of public concern). I therefore deny the defendants' motion to dismiss on this basis.

/ / / /

/ / / /

5. It is premature to decide that the defendants were justified in their actions.

The defendants argue that even if Crampton was speaking on a matter of public concern, the City was justified in terminating his volunteer role under the *Pickering* balancing test. Crampton responds that nothing in the complaint supports the defendants' arguments for why they could terminate him. Instead, he contends, the defendants stray from the complaint's allegations and make their own conclusory assertions about the risks of his speech. And he contends that even if the City was justified in terminating him as a volunteer, he has plausibly alleged the defendants retaliated against him as a private citizen because they defamed him, canceled his service award, and undermined his real estate business.

The *Pickering* balancing test is a "fact-sensitive and deferential weighing of the government's legitimate interests" against the First Amendment rights of public employees. *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 677 (1996). That test involves "a two-step, burden-shifting approach." *Damiano v. Grants Pass Sch. Dist. No. 7*, 140 F.4th 1117, 1137 (9th Cir. 2025). "First, a plaintiff must establish a prima facie case of retaliation." *Id.* (quotation omitted). "This requires the plaintiff to show that (1) [he] engaged in expressive conduct that addressed a matter of public concern; (2) the government officials took an adverse action against [him]; and (3) [his] expressive conduct was a substantial or motivating factor for the adverse action." *Id.* (quotation omitted). If the plaintiff makes out a prima facie case, "the burden shifts to the government, which can avoid liability in one of two ways." *Id.* "First, the government can demonstrate that its legitimate administrative interests in promoting efficient service-delivery and avoiding workplace disruption outweigh the plaintiff's First Amendment interests." *Id.* (quotation omitted). "Alternatively, the government can show that it would have taken the same actions in the absence of the plaintiff's expressive conduct." *Id.*

*Pickering* requires "a fact-sensitive, context-specific balancing of competing interests." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 979-80 (9th Cir. 1998). "In many cases, factual development is necessary, so the balancing cannot be performed on a 12(b)(6) motion." *Weisbuch v. County of L.A.*, 119 F.3d 778, 783 (9th Cir. 1997). "Where the facts alleged do not decisively indicate that the state's interest outweighs the plaintiff's, the *Pickering* balancing is generally deferred at least to the summary judgment stage." *Jensen v. Brown*, 131 F.4th 677, 691 (9th Cir. 2025).

Here, the defendants assert that Crampton's comments "carried the potential to cause friction, ruin morale within the HPD, and threaten public confidence in the HPD." ECF No. 6 at 18. They also assert that "Crampton's vocal discontent with HPD's new leadership was a reasonable indication that he would not abide by Defendants' policies, whether existing or new." *Id.* But the complaint contains no allegations of disruption or that Crampton would not abide by HPD and City policies as a volunteer. Because of the fact-specific nature of *Pickering* balancing, resolving the balance between the competing interests at dismissal is inappropriate in this case. Additionally, Crampton has alleged retaliatory acts independent of removing him from his volunteer position. I therefore deny the defendants' motion on this basis.

<u>6. I defer considering whether Garcia-Vause is entitled to qualified immunity.</u>

Garcia-Vause argues that she is entitled to qualified immunity because "Crampton did not enjoy a constitutionally protected interest, either in his reputation, his purported volunteer position . . ., or the alleged speech," so "he cannot sufficiently plead that those rights were 'clearly established.'" ECF No. 7 at 16. Crampton responds that it is clearly established that a volunteer or private citizen who engages in protected speech has right to be free from termination or other retaliation. And he argues that it is clearly established that the speech he

engaged in qualifies as a matter of public concern under *Pickering*. He contends that even if there is not a case directly on point, any reasonable official would know they could not retaliate against a volunteer or a private citizen for criticizing the City's firing of a police chief or its management of a police department.

Because *Pickering* "requires a fact-sensitive, context-specific balancing of competing interests, the law regarding public-employee free speech claims will rarely, if ever, be sufficiently clearly established to preclude qualified immunity . . . ." *Brewster*, 149 F.3d at 979-80 (quotation omitted). "[T]he right in question is not the general right to be free from retaliation for one's speech." *Reichle v. Howards*, 566 U.S. 658, 665 (2012). Rather, the right at issue "must be defined at a more specific level tied to the factual and legal context of a given case." *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 729 (9th Cir. 2022). "The question whether a public employee or contractor enjoyed a clearly established right to speak depends on whether the outcome of the *Pickering* balance so clearly favored the plaintiff that it would have been patently unreasonable for the government to conclude that the First Amendment did not protect his speech." *Id.* (simplified). "Not surprisingly, there will rarely be a case that clearly establishes that the plaintiff is entitled to prevail under the fact-sensitive, context-specific balancing required by *Pickering*." *Id.*

Crampton cites to two cases, *Hyland v. Wonder* and *Eng v. Cooley*, as clearly established law. ECF No. 13 at 17-18. *Hyland* held that "the opportunity to serve as a volunteer constitutes the type of governmental benefit or privilege the deprivation of which can trigger First Amendment scrutiny." 972 F.2d 1129, 1135-36 (9th Cir. 1992) (stating that "volunteer status, no less than business permits and tax exemptions, is a valuable governmental benefit or privilege that may not be denied on the basis of constitutionally protected speech"). *Hyland* involved a

volunteer at a juvenile probation department who wrote a memorandum to judges detailing the juvenile hall director's "alleged mistakes, failures, and overall incompetence in administering Juvenile Hall." *Id.* at 1133. When the plaintiff shared his memorandum with the chief probation officer, he was terminated as a volunteer and banned from the juvenile hall. *Id.* The *Hyland* court did not decide that this conduct violated the plaintiff's First Amendment rights. Rather, it remanded to the district court to determine "to what extent Hyland's memorandum disrupted office operations" under the *Pickering* test. *Id.* at 1140. *Hyland* thus clearly establishes that terminating a government volunteer can trigger First Amendment protections and activate the *Pickering* balancing test. But because *Hyland* did not rule that the government official violated the First Amendment, it is not clearly established law that would have put Garcia-Vause on notice that she would violate Crampton's First Amendment rights if she terminated him as a volunteer for his statements at the city council meetings.

*Eng* is more helpful with respect to Crampton's allegations that he was retaliated against in ways that affected him only as a private citizen, such as revoking the service award. In *Eng*, the Ninth Circuit stated that "when Eng commented upon matters of public concern as a citizen and not pursuant to his job responsibilities, his speech was protected by the First Amendment—that rule had long been the law of the land." 552 F.3d 1062, 1075 (9th Cir. 2009) (simplified). But the *Eng* court also noted that the defendants "waived the *Pickering* balancing argument" for the statement the plaintiff made as a private citizen, so the court did not need to address "whether the Defendants' lack of justification to treat Eng differently was clearly established" under the *Pickering* test. *Id.* at 1076 n.6. So *Eng* also does not clearly establish that under the facts in this case, any reasonable official would know that terminating Crampton, revoking a government

service award, and making a false statement while revoking that service award would violate Crampton's First Amendment rights.

Crampton also argues that he need not point to a case precisely like this one because the caselaw cited above was sufficient to put the defendants on notice that "the government may not retaliate against a volunteer of a public agency, or a private citizen, for speech criticizing the termination of well-regarded chief of police and the City's adversarial management of the HPD." ECF No. 13 at 18. But that argument ignores the law that there will rarely be clearly established law in the *Pickering* context.

Because I am granting Crampton leave to amend his First Amendment claim, it is premature to conclusively decide whether Garcia-Vause is entitled to qualified immunity as to each of Crampton's retaliation allegations. But if Crampton seeks to reassert a First Amendment claim against Garcia-Vause in her individual capacity, he should consider whether he can overcome a qualified immunity defense.

7. Crampton has plausibly alleged a *Monell* claim against the City.

The City argues that Crampton has not plausibly alleged the City's liability under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). The defendants argue that Crampton has not alleged "a clear official policy that authorized City employees to deprive him of his constitutional rights, nor are there any allegations concerning a pattern of violations by a final policymaker." ECF No. 7 at 17. They further contend that Crampton has not alleged that Garcia-Vause is a final policymaker and he does not name another final policymaker who ratified her decision to dismiss him as a volunteer.[11]

[11] The City argues that "there is no City policy of retaliating against HPD personnel who engage in protected conduct," and no one took adverse actions against Crampton due to his speech. ECF No. 7 at 17. It cites Garcia-Vause's declaration in support. *Id.* I cannot consider Garcia-Vause's

Crampton responds that he has adequately alleged that the City had an official policy and practice of punishing HPD employees' protected speech when it conflicted with the defendants' views. He also argues that the City ratified Garcia-Vause's firing of Crampton in retaliation for his speech. Crampton contends that the complaint contains examples of the policy and practice, including that three prior police chiefs were fired or forced to resign for criticizing the City's management of HPD.

There is no respondeat superior liability for government entities under § 1983. *Monell*, 436 U.S. at 691. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. To state a claim for municipal liability under *Monell*, a plaintiff must plausibly allege: "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-91 (1989)). A plaintiff can establish a policy, practice, or procedure for a *Monell* claim by demonstrating that a municipality had "(1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602-03 (9th Cir. 2019).

/ / / /

---

declaration on a Rule 12(b)(6) motion to dismiss, nor can I accept the defendants' position that there is no City policy or practice of retaliation where the complaint alleges otherwise.

*a. Crampton has plausibly alleged a de facto policy, custom, or practice.*

To adequately allege a de facto policy, custom, or practice, a plaintiff must allege facts sufficient to show a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quotation omitted). "The custom must be so 'persistent and widespread' that it constitutes a permanent and well settled city policy." *Id.* (quoting *Monell*, 436 U.S. at 691). Liability "may not be predicated on isolated or sporadic incidents," rather "it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.*

Crampton has plausibly alleged an unofficial policy or practice of terminating HPD employees who criticize the City's management of the department. ECF No. 1 at 10-11. He alleges that "the last three HPD police chiefs have been forced out by City officials for engaging in constitutionally protected conduct and/or expression that conflicts with Defendants' whims." *Id.* at 11. He also alleges that multiple members of the city council retaliated against him for his speech criticizing the City's management of HPD. *Id.* at 10. I must accept these allegations as true at this stage, and they plausibly allege a widespread de facto policy, custom, or practice of sufficient duration, frequency, and consistency to survive a motion to dismiss.

*b. Crampton has not plausibly alleged ratification.*

Crampton points to paragraphs 67 and 86 of his complaint to argue that he adequately alleged a ratification theory. ECF No. 13 at 16. However, paragraph 67 is conclusory, as it states only that "[a]ll of the retaliatory acts alleged herein are attributable to Defendants' policy and practice of retaliation which was based on the policymaking and final decision-making authority

of the City." ECF No. 1 at 11. Paragraph 67 does not identify who the final policymaker is or any facts showing that a final policymaker ratified Garcia-Vause's conduct.

Paragraph 86 comes closer but is unclear given Crampton's argument in his response that he is proceeding on a ratification theory. That paragraph states that the alleged unlawful actions "make the City fully liable to Plaintiff under 42 U.S.C. §1983 based on the authority and actual decisions of Defendant Garcia-Vause. In addition, such unlawful actions, omissions and decisions, as alleged herein, were based on the policymaking and final decision-making authority of the City, and were based on the policy, custom and practice of the City" to retaliate. *Id.* at 15. Although this paragraph could be construed to allege that Garcia-Vause is a final policymaker, that is not what Crampton argues in his opposition brief. Instead, he argues ratification but does not identify the final policymaker who ratified Garcia-Vause's conduct. ECF No. 13 at 16. Because it is not clear that amendment would be futile, Crampton may amend his *Monell* claim to assert facts supporting any theory of *Monell* liability he believes he can plausibly allege.

**B. I deny Garcia-Vause's motion to dismiss the defamation claim, and grant in part her motion to dismiss the false light claim.**

Crampton's defamation and false light claims are based solely on the allegation that Garcia-Vause falsely told "the HPD committee in charge of selecting community service award recipients that [Crampton's] award was being cancelled because he was under investigation for fraud." ECF No. 1 at 16 (defamation), 17 (false light). Garcia-Vause argues that her alleged statement about the investigation is true, substantially true, or opinion, so Crampton's defamation and false light claims fail.[12] She notes that Crampton alleges the Secretary of State

---

[12] Garcia-Vause improperly mixes her anti-SLAPP motion with her motion to dismiss for failure to state a claim, as she sometimes relies on her declaration to support her arguments for

investigated his PAC and found that the PAC had miscategorized donations and had to amend its filings. She thus contends that the gist of her statement was true even if the investigation was not one for fraud. She also argues that "characterizing the investigation as a 'fraud' investigation conveys Garcia-Vause's judgment about the quality of investigation and Crampton's behavior leading to the investigation, which is protected opinion."[13] *Id.* Crampton responds that the statement that he was personally under investigation for fraud was false both because he was not personally under investigation and because the investigation did not involve fraud. He also argues Garcia-Vause's statement was not an opinion but a false statement of fact.

To state a defamation claim, the plaintiff must plausibly allege "(1) a false and defamatory statement by a defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 90 (Nev. 2002) (simplified). To state a false light claim, the plaintiff must plausibly allege: (1) the defendant placed the plaintiff in a false light that "would be highly offensive to a reasonable person," and (2) the defendant knew of "or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the [plaintiff] would be placed." *Nigam v. Ahmad*, 561 P.3d 597 (Nev. App. 2024) (citing Restatement (Second) of Torts § 652E). "The test for whether a statement constitutes fact or opinion is: whether a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact." *Lubin v. Kunin*, 17 P.3d

---

dismissing Crampton's claims under Rule 12(b)(6). *See* ECF No. 7 at 19. I consider only the complaint's allegations.

[13] Garcia-Vause cites to her own affidavit to assert that she knew about this investigation and "based on her own investigation and information from trusted sources, understood that it concerned irregularities." ECF No. 7 at 19. Because I cannot consider Garcia-Vause's declaration in relation to the motion to dismiss, I disregard this argument.

422, 426 (Nev. 2001) (quotation omitted). If a statement could be construed as ambiguous as to whether it is an opinion, a statement that "gives rise to the inference that the source has based the opinion on underlying, undisclosed defamatory facts" can be actionable. *Id.* For example, "it may be actionable to state an opinion that plaintiff is a thief, if the statement is made in such a way as to imply the existence of information which would prove plaintiff to be a thief. In such situations, where a statement is ambiguous, the question of whether it is a fact or evaluative opinion is left to the jury." *Id.* (quotation omitted).

Garcia-Vause challenges these two claims by arguing that the statement she made was true or was an opinion. But as discussed above, Crampton has plausibly alleged that Garcia-Vause made a false statement of fact that he was under investigation for fraud. Additionally, taking the complaint's allegations as true, Crampton has plausibly alleged that Garcia-Vause's statement was one of fact. The allegation that the city manager stated that Crampton was being investigated for fraud plausibly alleges a statement of existing facts. I therefore deny the motion to dismiss these two claims on this basis.

Garcia-Vause also argues that the false light claim fails because Crampton does not "allege facts showing emotional distress or that the comments would be highly offensive to a reasonable person." ECF No. 6 at 20. Crampton does not respond to this argument. I therefore grant this portion of the motion as unopposed and dismiss the false light claim. LR 7-2(d). But because it is not clear that amendment would be futile, I grant Crampton leave to amend to reassert it.

**C. IIED**

Garcia-Vause argues that she is entitled to discretionary act immunity under Nevada state law because Crampton's IIED claim arises out of discretionary personnel management decisions

and because she did not act in bad faith. She also argues that there was no extreme and outrageous conduct in ordinary personnel management decisions.[14] Crampton responds that discretionary act immunity does not apply at this stage because I must accept as true his allegation that "Garcia-Vause was not acting pursuant to her individual judgment or on the basis of social, economic, or political policy. Rather, the Complaint expressly alleges that Defendant Garcia-Vause was following an entrenched playbook of firing those who engage in protected expression that offends the City's sensibilities." ECF No. 13 at 19-20. He also argues that he has plausibly alleged that a retaliatory firing for engaging in protected activity may qualify as extreme and outrageous conduct.

Under NRS § 41.032(2), "no action may be brought . . . against . . . the State or . . . its political subdivisions based upon the exercise . . . or failure to exercise . . . a discretionary function or duty . . . ." In *Martinez v. Maruszczak*, the Supreme Court of Nevada adopted the federal *Berkovitz-Gaubert* framework for determining whether discretionary act immunity applies. 168 P.3d 720, 728-29 (Nev. 2007) (en banc). Under that approach, acts are entitled to discretionary act immunity if (1) "the disputed act [is] discretionary, in that it involves an element of judgment or choice," and (2) "the judgment is of the kind that the discretionary function exception was designed to shield," meaning the judgment is "based on considerations of social, economic, or political policy." *Butler ex rel. Biller v. Bayer*, 168 P.3d 1055, 1066 (Nev. 2007) (en banc) (quotation omitted). "The focus of this second inquiry is not on the employee's subjective intent in exercising the discretion conferred . . . but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* (quotation omitted). In *Paulos v.*

[14] Garcia-Vause also contends that an IIED claim cannot be based on a true statement, but as already discussed, Crampton has plausibly alleged the statement was untrue.

*FCH1, LLC*, the Supreme Court of Nevada held that a police department's decisions regarding hiring, training, and supervision involved policy considerations and were therefore protected by discretionary act immunity. 456 P.3d 589, 595-96 (Nev. 2020) (en banc).

Garcia-Vause's decisions regarding whether Crampton could continue to provide volunteer services to the City are protected by discretionary act immunity.[15] The Supreme Court of Nevada has held that personnel decisions are the kinds of decisions that discretionary act immunity protects. *Id.* Although Crampton alleges the termination decision was taken as part of the City's longstanding custom of retaliating against critics, he does not allege that a city manager has no discretion in deciding to terminate volunteers. Rather, he alleges that Garcia-Vause was part of a retaliatory cabal. I therefore grant Garcia-Vause's motion to dismiss Crampton's IIED claim based on her terminating him as a volunteer because it is barred by discretionary act immunity.

The parties do not separately address Crampton's allegation that Garcia-Vause's false allegation of fraud was extreme and outrageous conduct that caused him emotional distress. *See* ECF No. 1 at 18-19. It is unclear from Garcia-Vause's motion if she believes this statement was made in the context of personnel decisions where it apparently had to do with a service award. Crampton did not separately argue in response that the false statement was not protected by discretionary act immunity or that it constituted extreme and outrageous conduct regardless of whether it was made in the context of a personnel action. The parties did not address the false statement independently of the allegation related to his termination as a volunteer, so I do not

---

[15] Garcia-Vause denies that she made any decisions regarding Crampton's status as a volunteer. ECF No. 6-2 at 9. But I must take the complaint's allegations as true, and Crampton asserts an IIED claim against Garcia-Vause for his termination as a volunteer. ECF No. 1 at 19 (alleging he suffered emotion distress following "Garcia-Vause's decision to terminate him as a volunteer").

either. Because it is questionable whether Garcia-Vause's motion adequately addressed the false statement portion of the IIED claim, I grant Crampton leave to amend to reallege the IIED claim based on only the alleged false statement, and Garcia-Vause may move to dismiss it in a motion that specifically addresses that allegation.

## III. I DENY CRAMPTON'S MOTION TO STRIKE (ECF No. 14).

Crampton moves to strike portions of Garcia-Vause's declaration under Rule 12(f), asserting that she included "gratuitous remarks" about Chadwick and Crampton that are unrelated to whether she made her statements in good faith. ECF No. 14 at 1. Garcia-Vause responds that Rule 12(f) only applies to pleadings, not an exhibit attached to a motion. She also argues that Crampton placed Chadwick's and his conduct at issue, so she responded to give context to her declaration. In reply, Crampton argues that if Rule 12(f) does not apply, I could strike the immaterial portions of the declaration under my inherent power.

I "have inherent power to control [my] docket," including the power to strike documents. *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (quotation omitted). I deny the motion to strike because I am not considering the declaration to resolve the anti-SLAPP motion and because I do not find the content worthy of invoking my inherent power to strike.

## IV. CONCLUSION

I THEREFORE ORDER that defendant Stephanie Garcia-Vause's motion to dismiss **(ECF No. 6) is DENIED**.

I FURTHER ORDER that the defendants' motion to dismiss **(ECF No. 7) is GRANTED in part** as set forth in this order.

I FURTHER ORDER that plaintiff Ervin Crampton's motion to strike **(ECF No. 14) is DENIED**.

I FURTHER ORDER that plaintiff Ervin Crampton may file an amended complaint consistent with this order by October 29, 2026.

DATED this 28th day of September, 2026.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE